UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| Gordon Hook,<br>    *Plaintiff,*<br><br>    *v.*<br><br>UBS Financial Services, Inc.,<br>    *Defendant.* | Civil No. 3:10cv950 (JBA)<br><br><br><br>May 4, 2011 |
|---|---|

RULING ON MOTIONS

Plaintiff Gordon Hook seeks to enjoin Defendant UBS Financial Services, Inc. ("UBS") from enforcing a promissory note that it required Hook to execute after he commenced his employment at UBS. UBS [Doc. # 24] moves under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, to compel arbitration and for dismissal or stay pending completion of arbitration. Hook moves [Doc. # 43] for a preliminary injunction to enjoin UBS from enforcing the arbitration provisions of the promissory note and from proceeding with the pending arbitration before an arbitration panel constituted by the Financial Industry Regulatory Authority ("FINRA"). For the following reasons, UBS's motion to compel arbitration and for dismissal will be granted, and Hook's motion for injunctive relief will be denied.

I.    Background

UBS hired Hook from Wachovia Trust as a Financial Adviser on January 2, 2007. According to Hook, UBS made numerous promises to entice him to leave Wachovia, including a large signing bonus. On January 4, 2007, Hook completed and signed a Form U–4, as part of the Uniform Application for Securities Industry Registration or Transfer for the Financial Industry Regulatory Authority ("FINRA"), of which UBS is a member.

In connection with his hiring, Hook received a check for $1.1 million in the form of a loan, dated February 21, 2007, the terms of which were memorialized in a Promissory Note (the "Note") and Employee Forgivable Loan Letter of Understanding ("EFL"), which Hook executed on February 24, 2007, seven weeks after he commenced his employment at UBS.[1] The Note also included an arbitration clause:

> With the exception of claims for injunctive relief under this Agreement, Employee and UBS Financial Services agree that any disputes between Employee and UBS Financial Services including claims concerning compensation, benefits or other terms or conditions of employment and termination of employment . . . whether they arise by statute or otherwise . . . will be determined by arbitration as authorized and governed by the arbitration law of the state of New York. Any such arbitration will be conducted under the auspices and rules of The NASD, Inc. . . . To the fullest extent permitted by law, by signing this Agreement, Employee waives any right to commence, be a party to or an actual or putative class member of any class or collective action arising out of or relating to his/her employment with UBS financial Services or the termination of his/her employment with UBS Financial Services.

(Ex. B to Mem. Opp'n [Doc. # 33] at 5.) The "Remedies" section of the Note further provides that "[e]mployee also specifically agrees that, in the event of breach of the Solicitation of Clients While Debt Outstanding and/or Confidentiality of Client Information Paragraphs of this Note, damages alone will be an inadequate remedy and UBS Financial Services will in addition to damages for past breach be entitled to injunctive or other equitable relief against Employee to enforce the provisions of these Paragraphs." (*Id.* at 3.)

---

[1] Although Hook alleged in his Amended Complaint that it was his "understanding and intent when he signed the Note . . . that the loan was a forgivable draw against the commissions that Mr. Hook generated for UBS," (Am. Compl. [Doc. # 31] ¶ 15), his counsel states in his memorandum in opposition to the motion to compel arbitration that "UBS never represented to Hook that the Forgivable Loan was an advance or a draw against commissions" (Mem. Opp'n at 3).

2

On June 2, 2010, Hook resigned from UBS and joined Merrill, Lynch, Pierce, Fenner & Smith ("Merrill Lynch"). That same day, he received a call from UBS requesting that he pay the balance of the Forgivable Loan, $722,524.99. When Hook did not pay, UBS froze Hook's and his wife's access to his UBS Resource Management Account that he opened and had access to as a UBS employee and which was maintained at UBS; however, UBS has since released its attachment.

On June 8, 2010, Hook sued UBS in Connecticut Superior Court. On June 10, 2010, UBS filed an arbitration demand with FINRA, claiming breach of contract, unjust enrichment, and breach of non–solicitation agreement. On June 16, 2010, UBS removed this action to federal court, claiming diversity jurisdiction and in the alternative, jurisdiction under the Federal Investment Advisers Act of 1940 and the Fair Labor Standards Act.

In Count One, Hook seeks declaratory relief concerning the enforceability of the Note. In Count Two, he seeks injunctive relief prohibiting UBS from enforcing the Note, including its arbitration provisions. In Count Three, Hook seeks damages under state and federal fair wage laws. In Count Four, Hook seeks damages under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, *et seq.* In Counts Five through Nine, Hook claims respectively tortious interference with business relations, misrepresentation of employment terms, breach of contract by failing to support his development of financial services clients, statutory theft, and common law conversion. In Count Ten, he seeks a declaratory judgment that the arbitration provision of the Note is void because he was fraudulently induced to sign the Note and its arbitration provision. In Count Eleven, Hook seeks damages for breach of the covenant of good faith and fair dealing. In

Count Twelve, Hook seeks a declaratory judgment and injunctive relief from the arbitration provision in the Form U–4.

II. The Federal Arbitration Act

Under the FAA, written agreements to arbitrate "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4.

III. Discussion

In its motion to compel arbitration, UBS argues that all disputes between the parties are subject to the arbitration agreements in the Note and the Form U–4. Hook responds that the Note's arbitration provision is invalid because he was fraudulently induced to sign the Note and that the disputes fall outside the scope of the Note's arbitration provision. Although Plaintiff previously argued that neither the Note nor the Form U–4 arbitration provisions are valid, his counsel conceded at oral argument that because of the Note's integration provision, if the Court were to determine that the arbitration provision under the Note is enforceable, the parties' dispute will be arbitrated, and the Court need not separately address the validity or scope of the Form U–4 arbitration provision.

A. Validity of the Note's Arbitration Provision

Hook claims in Count Ten that the Note's arbitration provision is invalid because he was fraudulently induced to sign the Note as a whole: "UBS fraudulently induced Hook to execute the Note, including the arbitration provision" based on "UBS represent[ations] to

4

Hook that the money received from the Note was a sign–on bonus and would not have [to] be paid back," and on "UBS represent[ations] to Hook that they would not seek to enforce the Note or its arbitration provision." (Am. Compl. ¶ 105(a)(b).)

Hook argues that *Rent–A–Center v. Jackson*, No. 09–497, 561 U.S. __, 130 S. Ct. 2772, 2778 (2010), requires the Court to consider the validity of the arbitration agreement. There, the Supreme Court held that "[i]f a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4." *Id.* However, *Rent–A–Center* concluded that because the plaintiff had challenged only the validity of the contract as a whole and not the arbitration agreement, the question of the arbitration provision's validity was to be determined by the arbitral panel: "where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract[,] we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene." *Id.* Hook does not differentiate between the arbitration provision and the Note as a whole, claiming that fraud "induced the whole contract equally." Therefore, *Rent–A–Center* does not support his position that the Court must determine the validity of the arbitration agreement.

### B. Scope of the Note's Arbitration Provision

Hook also argues that his injunction, conversion, and statutory theft claims are outside the scope of the arbitration provision in the Note, which he says only applies to his employment with UBS. Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense

to arbitrability." *JLM Indus., Inv. v. Stolt–Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). This principle is based on the FAA's expression of "a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Id.* (citing *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001)).

In *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, the Second Circuit instructs that "recognizing that there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow." 252 F.3d 218, 224 (2d Cir. 2001). "[I]f reviewing a narrow clause, the court must determine whether the dispute is over an issue that 'is on its face within the purview of the clause,' or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause," and "[w]here the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview." *Id.* (internal citations omitted). However, "[w]here the arbitration clause is broad, 'there arises a presumption of arbitrability' and arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under it." *Id.* (internal citations omitted).[2]

In this case, the arbitration provision covers "any disputes between Employee and UBS Financial Services including claims concerning compensation, benefits or other terms

---

[2] In *Louis Dreyfus*, the arbitration clause was "broad" as it mandated that "[a]ny dispute arising from the making, performance or termination of this Charter party" be arbitrated, with "sweeping [language] covering the full panoply of events, from the time of contracting . . . through execution under the terms of the charter . . . until the eventual expiration of the agreement." *Id.* at 226. In *JLM Industries*, the Second Circuit determined that the clause "[a]ny and all differences of whatsoever nature arising out of the charter" was broad because of its expansive nature. 387 F.3d at 175.

or conditions of employment and termination of employment . . . whether they arise by statute or otherwise," "[w]ith the exception of claims for injunctive relief under [the Note]." This is the same sort of "sweeping language" found in *Louis Dreyfus* as it covers all disputes relating to employment and its termination. Hence, Hook's conversion and statutory–theft claims based on UBS freezing his UBS Resource Management Account after he left UBS for Merrill Lynch and did not repay money loaned to him under the promissory note are disputes that are collateral to his compensation and the termination of his employment and therefore fall within the scope of the Note's arbitration provision.

However, the Note's arbitration provision includes a "carve–out" applicable to claims for injunctive relief. Defendant argues that the Note neither entitles Plaintiff to injunctive relief nor allows for adjudication of requests for injunctive relief in court, as the carve–out applies only to "claims for injunctive relief under this agreement," and the Note's "Remedies" section provides only that the "Employee . . . agrees that . . . [UBS] will . . . be entitled to injunctive or other equitable relief against Employee to enforce the provisions of these Paragraphs," without setting forth for any injunctive relief available for employees. Plaintiff responds that employees may be entitled to remedies for other breaches of the Note, including injunctive relief, not explicitly discussed in the Remedies section, and in fact, the Remedies section is limited only to breaches by UBS employees of the provisions contained in the "Solicitation of Clients While Debt Outstanding" and "Confidentiality of Client Information" paragraphs of the Note.

The Court need not determine whether the Note's carve-out would exempt Plaintiff's injunctive–relief claims from arbitration because he has failed to demonstrate that he is entitled to the injunctive relief he seeks in Count Two of the Complaint and in his

7

motion for a preliminary injunction, specifically preliminary and permanent injunctions ordering UBS to release the attachment on his and his wife's UBS brokerage and bank accounts and preliminary and permanent injunctions prohibiting UBS from enforcing the Note and its arbitration provision. A party seeking a either a preliminary injunction or a permanent injunction must demonstrate that it will suffer irreparable harm absent injunctive relief,[3] which Plaintiff has failed to demonstrate. Because UBS has released Plaintiff's and his wife's UBS brokerage and bank accounts, his request for injunctions ordering release of those accounts is moot, as he no longer suffers from harm caused by their attachment. Further, Plaintiff argues that the irreparable harm he will suffer absent injunctive relief is that he will be "forced to continue to defend himself in the FINRA arbitration" pursuant to the Note "despite the fact that none of his claims are arbitrable" (*see* Pl.'s Mem. Supp. [Doc. # 43] at 5), but for the aforementioned reasons, whether the Note's arbitration provision is valid is a question for arbitrators, not this Court, and his other claims fall within the broad scope of the Note's arbitration provision. Because Plaintiff has failed to demonstrate that "none of his claims are arbitrable," which is central to the irreparable harm he claims exists, he has failed to demonstrate entitlement to preliminary or permanent relief enjoining enforcement of the Note and its arbitration provision.

---

[3] "Generally, a party seeking a preliminary injunction must demonstrate that it will suffer irreparable harm absent injunctive relief and either (1) that it is likely to succeed on the merits of the action, or (2) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, provided that the balance of hardships tips decidedly in favor of the moving party." *Mullins v. City of New York*, 626 F.3d 47, 52–53 (2d Cir. 2010). "Generally, to obtain a permanent injunction a party must show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." *See Norflet v. John Hancock Fin. Serv., Inc.*, 422 F.Supp.2d 346, 356 (D. Conn. 2006) (quoting *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1362 (2d Cir. 1989)).

In conclusion, the broad arbitration clause requires that challenges to the validity of the Note (and to its arbitration provision) must be determined by arbitrators, including all of Plaintiff's claims of fraudulent inducement, conversion, and statutory theft, and Plaintiff has failed to demonstrate likelihood of irreparable harm warranting injunctive relief. UBS's motion to dismiss and compel arbitration is therefore granted. *See Lewis Tree Service, Inc. v. Lucent Technologies, Inc.*, 239 F. Supp. 2d 332, 340 (S.D.N.Y. 2002) ("Because all of Ironman's claims are subject to arbitration, no useful purpose will be served by granting a stay of Ironman's claims and thus its action against the defendants is dismissed.") (citing *Seus v. John Nuveen & Co, Inc.*, 146 F.3d 175, 178 (3d Cir. 1998) ("If all the claims involved in an action are arbitrable, the court may dismiss the action instead of staying it.")).

III. Conclusion

Accordingly, Defendant's [Doc. # 24] Motion to Compel Arbitration and for Dismissal of the Action is GRANTED, and because Plaintiff has failed to demonstrate likelihood of success on the merits, his [Doc. # 42] Motion for Preliminary Injunction is DENIED. Plaintiff's [Doc. # 44] Motion for Bond Waiver is DENIED as moot. The Clerk is directed to close the case.

IT IS SO ORDERED.

          /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 4th day of May, 2011.